Ansel GREEN

v.

STATE of Maine et al.

Supreme Judicial Court of Maine.

Aug. 20, 1968.

A. MacNichol, Portland, for Ansel Green.

Garth K. Chandler, Asst. Atty. Gen., Augusta, for the State.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE, and WEATHERBEE, JJ.

DUFRESNE, Justice.

On report. The following facts are admitted. At the May term 1949 of the Superior Court in Knox County in this State, the petitioner (Green) was convicted of larceny of an automobile valued at $200.00, a crime punishable by imprisonment in the State Prison, and in addition thereto was charged and adjudged to having been before convicted of the crime of robbery and sentenced thereon by a court of this State to Maine State Prison. By reason of the "habitual criminal" statute, so-called, (R.S. 1954, c. 149, § 3, now as amended 15 M.R.S.A. § 1742), he was sentenced as a recidivist upon the larceny conviction to serve not less than 12 nor more than 24 years in the Maine State Prison. Received at that institution on May 12, 1949 under the above sentence, Green was released on June 24, 1965 when paroled by the State Probation and Parole Board, said parole to continue in effect until February 3, 1972 or until revocation thereof or discharge in accordance with law.

While on parole Green committed the offense of receiving and aiding in concealing stolen goods; upon his plea of guilty entered December 22, 1966 he was sentenced to imprisonment in Maine State Prison, to wit, "into the custody of the warden of said state prison who shall cause the defendant to be punished by imprisonment, at hard labor, for not less than two (2) years and not more than four (4) years within the precincts of said state prison." Actual commitment to the State Prison followed on December 23, 1966.

Upon Green's return to the prison, he was deemed by the prison authorities to be serving his first sentence of not less than 12 nor more than 24 years, service of the 2nd sentence to await the termination of the first sentence; this official construction was mandatory under 34 M.R.S.A. § 1676, which requires that "Any parolee who commits an offense while on parole who is sentenced to the State Prison shall serve the 2nd sentence beginning on the date of termination of the first sentence, unless the first sentence is otherwise terminated by the board." Lewis v. Robbins, 1954, 150 Me. 121, 104 A.2d 838.

Green's first sentence was voided by this Court on January 23, 1968. See, Green v. State, Me., 237 A.2d 409. By reason thereof, he was ordered discharged from the first sentence on January 25, 1968, after having served thereon 18 years, 8 months and 14 days. The maximum legal penalty for the 1949 larceny charge to which Green could have been sentenced at the time was 5 years. (R.S.1954, c. 132, § 1).

After the judicial voidance of the first sentence, the prison authorities in their application of 34 M.R.S.A. § 1676 then ruled and now urge that the date of the beginning of service of the 2nd sentence was January 25, 1968, when Green's first sentence was terminated by the Court's official order of discharge. To test the legality of such official interpretation of 34 M.R.S.A. § 1676 as it affects Green's present term of incarceration under the 2nd sentence is the object of the instant post-conviction habeas corpus proceeding.

The State's counsel finds support for the warden's ruling in Smith v. Lovell, 1950, 146 Me. 63, 77 A.2d 575. In Smith, our statute making it mandatory that a 2nd sentence upon conviction for an offense committed while on parole be served consecutively, that is, beginning on the date of termination of the first sentence, was not involved, but there did exist an analogous

situation in that the 2nd sentence in Smith by its very terms was ordered to begin at the expiration of a previous 1st sentence. The principle would be the same whether the order of service of multiple sentences be directed by court pronouncement or statutory mandate.

Initially, Green sought relief from the 2nd sentence on the theory that the nullification of the 1st sentence showed up an error of fact not of record unknown to the accused and the sentencing court at the time of imposition of the 2nd sentence, which if known would have been taken into consideration in passing judgment. It is alleged that Green's service of more than 13 years upon a prior illegal sentence would undoubtedly have been given such credit by the sentencing judge if then known that no further service would have been exacted for the second offense. Whether accumulation of credits as such for time served under an illegal sentence may confer statutory relief in post-conviction habeas corpus, be such credits a matter of right or grace, we need not decide and we intimate no opinion thereon as that issue has been expressly withdrawn at argument.

The question with which we are concerned is as follows: When the first of consecutive sentences imposed at separate times is set aside for error, does the later *outstanding* sentence commence as of the date of its imposition, or as of the date of the invalidation of the first sentence?

As heretofore noted, Smith v. Lovell decided that when the first of consecutive sentences is voidable only and not void ab initio, it remains in full force and effect until vacated by a court of competent jurisdiction, and that the time served on the erroneous sentence cannot be credited to the outstanding valid sentence when the erroneous sentence is subsequently vacated, since the second sentence commences to run only from the time of the termination of the previous invalid sentence by judicial order vacating it.

In Smith v. Lovell, the prisoner, as Green does in the instant case, complained that he suffered imprisonment under the first sentence unjustifiably, and that the imprisonment which he suffered under that sentence, at least from the time he was incarcerated after the imposition of the valid and subsisting sentence, should be credited upon the latter sentence even though it was not to take effect until the erroneous sentence was terminated. The underlying rationale of the Court based upon the formalistic difference between void and voidable sentences was justified then upon the doctrine of waiver. The Court said at page 71, of volume 146 of the Maine reports, at page 579 of 77 A.2d: "The petitioner did none of these things. By his inaction he waived all of these provisions of the law which were available to him and which were designed and intended as a protection of his rights." On page 72, 77 A.2d on page 580: "If the plaintiff suffered imprisonment under the erroneous sentence it is because he did not avail himself of the provisions of law which existed for his benefit." The doctrine of waiver when applied to constitutional or statutory rights necessitates in this day more· than the mere failure to claim one's rights but rather connotes a free, deliberate and understanding foregoing of one's known rights, a situation which the record does not indicate to have existed in Smith. Fair play requires that where a prior sentence is set aside for error, whether the sentence be void or voidable, the second sentence which would otherwise commence at the termination of the previous sentence must be moved forward and made to run as of the first day of actual incarceration of the prisoner after its imposition. This is the only way that compliance can be had with the letter and spirit of our statutory requirement that a convict to State Prison serve the full term for whch he was sentenced, *including the day on which he was received into it.* Without credit for the time he has served since the imposition of the second sentence although originally applicable to the erro-

neous sentence, the convict is then made to serve more than the full term of the only valid sentence upon which his incarceration in State Prison may be legally predicated. 34 M.R.S.A. § 702. See, State of Maine v. Couture, 1960, 156 Me. 231, 241, 163 A.2d 646.

This humanitarian doctrine has gained recent converts. Brown v. Commissioner of Correction, 1958, 336 Mass. 718, 147 N.E.2d 782, 68 A.L.R.2d 708; Potter v. State, 1964, 263 N.C. 114, 139 S.E.2d 4. See also, Bennett v. Hollowell, 1927, 203 Iowa 352, 212 N.W. 701. We fully agree with the Massachusetts view, and in so far as Smith v. Lovell is contrary to the rule herein enunciated, it stands overruled.

■ Is the petitioner entitled to relief under 14 M.R.S.A. §§ 5502 to 5508? Jurisdictional questions are always open to judicial scrutiny, even though not raised by the parties. The Law Court can hear and determine only those matters authorized by statute and brought to it through the statutory course of procedure. Both of these limitations on the power of the court are jurisdictional and neither of them can be waived nor can consent of the parties confer jurisdiction upon the court. Bodwell-Leighton Co. v. Coffin & Wimple, Inc., 1949, 144 Me. 367, 69 A.2d 567; In re Williams' Estate, 1945, 141 Me. 219, 41 A.2d 825.

It is true that previously relief under the old writs of habeas corpus or error would not possibly have been forthcoming in the factual background of the instant case. The writ of habeas corpus was not available until the prisoner had served so much of an erroneous sentence as was within the power of the court to impose. Wallace v. White, 1916, 115 Me. 513, 99 A. 452. The writ of error was usable only for correction of defects evident upon the face of the record. Berger v. State of Maine, 1951, 147 Me. 111, 83 A.2d 571; Cressey v. State of Maine et al., 1965, 161 Me. 295, 211 A.2d 572.

■ Our post-conviction habeas corpus however was not intended to be a mere consolidated substitute for former remedies with their limited and fixed common law connotations, but designed as it was to be the sole and exclusive method of collateral attack upon the legality of a conviction and sentence, Thoresen v. State, 1968, Me., 239 A.2d 654, it must be given such reasonable flexibility within the spirit of the statutory enactment that it may be an effective procedural vehicle for collaterally reaching all fundamental defects in the administration of criminal justice.

In *Thoresen*, supra, we did re-affirm the liberal construction of the statute espoused in the recent case of Green v. State of Maine et al., 1968, Me., 237 A.2d 409, but denied relief in the absence of a presently existing restraint in Maine.

In the instant case Green is presently restrained in Maine as he is serving the 2nd sentence, to wit, a term of not less than 2 nor more than 4 years. The doctrine of prematurity is not involved in these proceedings and we do not intimate any opinion thereon. Green seeks relief from a past and presently existing illegal extension of the duration of his term of imprisonment due to the erroneous application of 34 M.R.S.A. § 1676 by the prison authorities. It is equally illegal to add to a sentence time to be served before or after the term's legal commencement or ending.

■ The duration of Green's imprisonment under the only valid subsisting sentence will be directly and substantially affected and increased if the warden's construction of 34 M.R.S.A. § 1676 is allowed to stand unimpeached. Such official violation of the prisoner's statutory rights sufficiently taints his present confinement that his detention, although arising from a legal sentence, becomes illegal in the execution thereof within the meaning of 14 M.R.S.A. § 5502, which says:

"Any person convicted of crime and incarcerated thereunder * * *, *who claims that he is illegally imprisoned,*

* * * may institute a petition for a writ of habeas corpus seeking release from an illegal imprisonment * * *." [Emphasis supplied]

As stated in Mottram v. State, 1967, Me., 232 A.2d 809: "Such interpretation is consistent with the legislative purpose to provide a single exclusive remedy for all collateral attacks on judgments of conviction post conviction as its title indicates." As the statute itself expressly provides, 14 M.R.S.A. § 5505, relief is not limited to the release of the petitioner or corrections of errors of law appearing on the face of the record, but includes relief beyond the sphere of remedial action provided by the previous writs of habeas corpus or error. Under our post-conviction law matter which does not form part of the record such as the applicable commencement date of the prisoner's term as determined by the prison authorities can be and in the instant case has been brought into consideration. Cressey v. State of Maine et al., 1965, 161 Me. 295, at 300, 211 A.2d 572.

The petitioner is entitled to relief in this post-conviction habeas corpus proceeding, but, since he admittedly has no right to immediate release, such relief shall be limited to a decree ordering the respondent warden to give the petitioner credit as time served on the sentence of not less than 2 nor more than 4 years he is now serving for the offense of receiving and aiding in concealing stolen goods, such time as he has served since and including the day on which he was received into Maine State Prison after the imposition of said sentence, to wit, from the 23rd day of December, 1966, being the day said valid subsisting sentence legally commenced, notwithstanding the fact that said time was being then served under and credited to a previous illegal sentence vacated January 25, 1968.

The case is remanded to the single Justice, to whom was assigned the petition for post-conviction relief, for an appropriate order under 14 M.R.S.A. § 5505 consistent with the opinion herein.

So ordered.