1998 ME 140

### ESTATE OF Gladys CALDEN.

Supreme Judicial Court of Maine.

Argued April 8, 1998.

Decided June 5, 1998.

---

Daniel P. Barrett (orally), Cloutier, Barrett, Cloutier & Conley, P.A., Portland, for appellants.

Paul E. Thelin (orally), Ainsworth & Thelin, P.A., South Portland, for appellee.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

CLIFFORD, Justice.

[¶ 1] Dennis Calden, Timothy Calden and Bonny Fernald appeal from a judgment entered in the Oxford County Probate Court (*Hanley, J.*) determining that Elizabeth Calden, as the heir of her deceased husband, was entitled to share in the distribution of Gladys Calden's estate.

[¶ 2] In July 1961, Gladys Calden executed a will containing the following provision:

In the event that my said husband, Richard F. Calden, does not survive me, or if there should not be sufficient evidence that he and I died other than simultaneously, then *I give, bequeath and devise all of said rest, residue and remainder of my estate in equal shares to* my son, Warren Drury, my son, Bernard Drury, my husband's son, *Leland Calden,* and my husband's daughter, Madeline Davenport, to have and to hold the same to him, her or them *and his, her, or their heirs forever.*

(emphasis added). Gladys's stepson, Leland Calden, died in February 1996. Leland was survived by his spouse, Elizabeth Calden, and his three children, Dennis Calden, Timothy Calden and Bonny Fernald.

[¶ 3] Following her death in October 1996, Gladys's will was informally admitted to probate. In January 1997, Elizabeth Calden petitioned the Probate Court for a special finding construing Gladys's will and determining the persons entitled to distribution under the will.[1] Asserting that she was Leland Calden's heir, Elizabeth requested the court to determine that she was entitled to her intestate share (one-half) of the portion of Gladys's estate that would have passed to Leland if he had survived Gladys. The appellants objected to the petition on the ground that Elizabeth was not Leland's heir.

[¶ 4] The Probate Court found that "[w]hile it is not clear that [Gladys] specifically wanted to include [Elizabeth Calden as one of Leland Calden's heirs,] there has been no evidence presented to the contrary." Citing 18–A M.R.S.A. § 1–201(17) (1998), the statutory definition of the term heirs, the Probate Court concluded that Elizabeth Calden was entitled to her distributive share under intestate succession. This appeal followed.

[¶ 5] The Probate Court concluded that Elizabeth was Leland's heir based on the statutory definition of that term and did not consider extrinsic evidence of Gladys's intent. We therefore review the judgment for errors of law. *See Estate of Hardy,* 609 A.2d 1162, 1163 (Me.1992).

[¶ 6] Because Gladys died after January 1, 1981, the effective date of the Probate Code, the Code applies to her will. *See* 18–A M.R.S.A. § 8–401(b)(1) (1998). Absent a clear indication of contrary intent, any rule of construction contained in the Code applies to instruments executed before the effective date of the Code. *See id.* § 8–401(b)(5).

[¶ 7] The term heirs is defined in the Probate Code as "those persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the property of a decedent." *Id.* § 1–201(17). "It is well established in this state that the use of a technical word, in the absence of clear evidence to the contrary, leads to the presumption that the testator intended such word in its technical legal sense." *New England Trust Co. v. Sanger,* 151 Me. 295, 302, 118 A.2d 760, 764 (1955).

---

1. Elizabeth died in June 1997 and, pursuant to M.R. Civ. P. 25(a) and M.R. Prob. P. 25, the personal representative of her estate, Gary H. Williamson, was substituted as the petitioner in this matter.

Absent a clear indication of contrary intent, the language of the will, construed with reference to the Probate Code, yields the conclusion that, as Leland's surviving spouse, Elizabeth was one of his heirs.[2]

[¶ 8] The appellants observe that Leland had only an expectation of inheritance from Gladys at the time of his death. Therefore, the appellants argue, Elizabeth is not an heir of Leland since the Probate Code defines heirs as those person entitled to the property of a decedent. We disagree. Section 1–201(17) of the Probate Code defines heirs as "those persons ... who are entitled under the statutes of intestate succession to the property of a decedent." 18–A M.R.S.A. § 1–201(17). As Leland's surviving spouse,

Elizabeth belongs to the class of persons entitled to his property under the laws of intestacy. *See id.* § 2–102. There is no basis in the Code for the appellants' contention that Elizabeth is an heir of Leland only if she would have been entitled to a share of Gladys's estate at the time of Leland's death.

The entry is:

Judgment affirmed.

---

2. We recognize that, under pre-Code case law, a surviving spouse is not an heir of a deceased spouse. *See, e.g., Linnell v. Smith,* 153 Me. 288, 290, 137 A.2d 357, 358 (1957); *Union Safe Deposit & Trust Co. v. Wooster,* 125 Me. 22, 24, 130 A. 433, 434 (1925). The appellants argue that the drafter of Gladys's would have been aware of this case law and relied on it in drafting her will. Nevertheless, the Probate Code had been in effect for fifteen years when Gladys's will became effective and the court found no evidence that Gladys intended to use the term heirs in other than its technical legal sense. In these circumstances, the court did not err by applying the definition of heirs contained in section 1–201(17) of the Code. *Cf. Estate of Weeks,* 462 A.2d 44, 48–49 (Me.1983).